1  **STEPHEN R. GOLDEN & ASSOCIATES**
Stephen R. Golden, Esq. (State Bar No. 163366)
2  Te'Aira L. Law, Esq. (State Bar No. 289118)
600 N. Rosemead Boulevard, Suite 100
3  Pasadena, California 91107
Telephone: (626) 584-7800
4  Facsimile:  (626) 568-3529
E-mail: businesslaw@stephenrgolden.com
5  Email:  teaira.law@stephenrgolden.com
6
7  Attorneys for Plaintiff
Noemi Penaloza
8

9  **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA- WESTERN DIVISION**
10

| | |
|---|---|
| 11 | Case No. : 2:14-cv-02571-PA-PJW |
| 12 | Assigned to The Honorable: Judge Percy Anderson |
| 13  NOEMI PENALOZA, an individual, | |
| 14          Plaintiff, | **SECOND AMENDED COMPLAINT FOR:** |
| 15 | 1. **PREDATORY LENDING & OTHER LENDING VIOLATIONS** |
| 16      vs. | 2. **VIOLATION OF CALIFORNIA CIVIL CODE §2924f** |
| 17  SELECT PORTFOLIO SERVICING, INC.; JP MORGAN CHASE BANK, | 3. **UNFAIR, FRAUDULENT BUSINESS PRACTICE** |
| 18  N.A.;  and DOES 1 through 50, inclusive, | 4. **BREACH OF CONTRACT** |
| 19 | 5. **QUIET TITLE** |
| 20  Defendant. | 6. **VIOLATION OF RESPA** |
| 21 | 7. **VIOLATION OF CALIFORNIA CIVIL CODE §2923.6(c)** |
| 22 | 8. **VIOLATION OF CALIFORNIA CIVIL CODE §2924.10(a)** |
| 23 | 9. **VIOLATION OF CALIFORNIA CIVIL CODE §2924(a)(5)** |
| 24 | |
| 25 | **DEMAND FOR JURY TRIAL** |

26  Plaintiff NOEMI PENALOZA (hereinafter referred to as "Plaintiff"), for her First

27  Amended Complaint against, defendants, alleges as follows:

28

## PARTIES

1. Plaintiff **NOEMI PENALOZA** (hereinafter referred to as "Plaintiff") is, and at all times material herein has been, an individual residing in the County of Los Angeles, State of California.

2. Defendant **SELECT PORTFOLIO SERVICING, INC** (hereinafter referred to as "**SPS**"), is a limited liability corporation doing business in and at all times herein mentioned authorized to do business in the State of California. **SPS** is the purported current servicer of the loan.

3. Defendant **JP MORGAN CHASE BANK, N.A.** (hereinafter referred to as "**CHASE**"), is a national association doing business in and at all times herein mentioned authorized to do business in the State of California. **CHASE** is the purported former servicer of the loan.

4. The true names and capacities, whether individual, associate, corporate or otherwise of the defendants named herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sue these defendants, and each of them, by fictitious names. Plaintiff will seek leave of court to amend their complaint to state the true names of Does 1 through 50 when ascertained. Plaintiff are informed, and on that basis allege that each defendant, including each defendant designated as a Does, is responsible for the alleged wrongful conduct and a party against whom equitable relief is appropriate. Plaintiff are informed, and on that basis allege, that each defendant is and/or was an agent, servant, coconspirator, affiliate and/or employee of each of the other defendants, and in doing the things alleged herein was acting within the course and scope of said agency, conspiracy and/or employment. Each defendant, including Does 1 through 50, will be collectively referred to hereinafter as "Defendants."

5. Plaintiff is informed, and believes, and thereon alleges that each Defendant, including Does, was and is the agent, employee, servant, subsidiary, partner, member, associate, or representative of each other Defendants, including Does, and all of the things alleged to have been done by the Defendants were done in the course and scope of the agency, employment, service, subsidiary relationship, partnership, membership, association, or representative relationship, and with the knowledge and consent of their

respective principals, employers, masters, parent corporations, partners, members, associates, or representatives.

## JURISDICTION

6. Pursuant to the California Code of Civil Procedure §395.5

> "A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases."

7. This Court has personal jurisdiction over Defendants because the contract was formed in Los Angeles County.

8. This Court has subject matter jurisdiction over this case because this is an unlimited civil case, given the amount in controversy greatly exceeds $25,000, exclusive of costs and interest, and these causes of action do not arise under federal law.

## VENUE

9. Venue is proper in Los Angeles County, California, because the real property that is the subject matter of the claims in this action is located within Los Angeles County; the Plaintiff and all Defendants reside in the County of Los Angeles; and the events giving rise to the claims made herein occurred in the County of Los Angeles.

## GENERAL ALLEGATIONS

10. On or about February 15, 2007, Plaintiff executed a Deed of Trust and Note with American Mortgage Network Inc. (hereinafter referred to as "**AMN**") for a loan of $568,000.00.

11. On or about February 26, 2007, Plaintiff purchased that certain parcel of real property with the legal address: 11332 Youngworth St., Culver City, CA 90230 for $710,000.00. The legal description of the property is as follows: "LOT 235 OF TRACT NO. 9733, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA. AS PER MAP RECORDED IN BOOK 142 PAGES 69 TO 72 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY."

12. On or about June 14, 2011, a Notice of Default and Election to Sell under Deed of Trust was recorded. The recording was requested by California Reconveyance Company (hereinafter referred to as "CRC") it was mailed to CRC. Attached was a declaration of compliance executed by Clement J. Durkins of **CHASE**, which stated they purportedly tried with due diligence to contact the borrower.

13. In or about the end of 2011 or the beginning of 2012, Plaintiff encountered financial difficulties, so she began seeking foreclosure alternatives. She contacted someone to assist her with her home. This person began a short sale for her when she actually wanted a modification.

14. On or about July 25, 2012, a Notice of Default and Election to Sell under Deed of Trust was recorded. The recording was requested by CRC it was mailed to CRC. Attached was a declaration of compliance executed by Siden Sou, Operation Senior Specialist, of **CHASE**, which stated they purportedly tried with due diligence to contact the borrower

15. On or about October 2, 2012, Chase sent a letter to inform Plaintiff that she had been approved for a short sale. Per the agreement, Chase would accept a minimum of $402,172.42 as full and final satisfaction of the Plaintiff's loan, the contract sale price was $475,000, and Chase needed to receive payment on or before October 19, 2012 or else to the offer would be null and void.

16. On or about October 24, 2012, Plaintiff submitted a loan modification to CHASE. Plaintiff never received a notice of acknowledgement of receipt, request for additional documents, or a letter of decision.

17. On or about October 30, 2012, Plaintiff received a letter from Bryan Miller at Chase denying the short sale request because "the offer that we have on file is no longer valid."

18. On or about November 12, 2012, Plaintiff submitted a complete loan modification application to Chase for the HAMP Program.

19. On or about November 14, 2012, Michael Johnson sent a qualified written request to Chase requesting information about the loan and stating the following: the loan terms were misrepresented at the time of application, the income was inflated, the

appraisal was falsely inflated, signatures were forged, a notary was not present to witness Plaintiff's signature, in addition to other concerns. This request was made pursuant to Dodd-Frank Act in 2010, 15 U.S.C. 1641(f)(2), and 12 U.S.C. §2605(k)(1)(D).

20. In November or December of 2012, Michael Johnson sent a letter to Chase informing it that it had violated California Civil Code 2924f, 2924g, and 2924h because Plaintiff "was not served property with trustee sales information 20 days prior to the foreclosure auction date. [t]he letter posted to the door of the residence was posted after the 20 day period required by the law."

21. On or about November 16, 2012, a Notice of Trustee Sale was recorded. The recording was requested by CRC and it was mailed to CRC. The trustee sale number was 257178CA. The sale was scheduled for 12/07/12 at 11:00 am this was placed on Plaintiff's door on the day of the sale.

22. On or about November 24, 2012, Michael Johnson submitted a qualified written request to Chase.

23. On or about November 26, 2012, Chase acknowledged receipt of correspondence pertaining to Consumer Care Law Group's representation of Plaintiff.

24. On or about November 27, 2012, Chase sent Consumer Care Law Group a form regarding its representation and its authorization from Plaintiff.

25. On or about December 4, 2012, Michael Johnson received a response to the qualified written request he submitted on November 24, 2012.

26. On or about December 4, 2012, Defendant sent Plaintiff a letter that her house was scheduled to be foreclosed on January 9, 2013.

27. On or about December 5, 2012, Consumer Law Group submitted the form Chase sent on November 27, 2012.

28. On or about January 4, 2013, Michael Johnson and/or his representatives were informed David that the LOA they submitted did not post correctly into Chase's system and that the David would upload it correctly and they could call back in 24 hours to receive an update on the status of the loan modification.

29. On or about January 9, 2013, Plaintiff received a Notice of Postponement of the Trustee Sale. The sale was postponed until 02/11/2013.

30. On or about January 24, 2013, Plaintiff received a Notice of Postponement of the Trustee Sale. The sale was postponed until 03/07/2013.

31. On or about January 26, 2013, Plaintiff received a letter that her foreclosure sale was rescheduled for 03/13/2013.

32. On or about February 1, 2013, Plaintiff submitted a hardship letter to Chase as requested.

33. On or about March 7, 2013, Plaintiff received a letter from Consumer Law Group informing her that her date of sale had been postponed until 03/20/2013. She did not receive any notice about this postponement from Defendants.

34. On or about March 15, 2013, Plaintiff received a Notice of Postponement of the Trustee Sale. The sale was postponed until 04/22/2013.

35. On or about March 25, 2013, Plaintiff submitted an application for a loan modification through Consumer Law Group with representatives Iris Marroquin and Michael W. Johnson.

36. On or about March 27, 2013, Plaintiff submitted a letter of authorization to Chase along with additional documents requested including a 4056-T.

37. On or about April 16, 2013, Iris, of Consumer Care Law Group, contacted Chase and left a voicemail for the specific of contact, Smith. This call was not returned,.

38. On or about April 17, 2013, Iris contacted Chase and spoke to Denise, who stated the file was under review and there were no additional documents needed.

39. On or about April 26, 2013, Plaintiff and/or Liz Gomez, of Consumer Law Care, contacted the bank and was informed that no additional documents were needed at this time.

40. On or about May 3, 2013, Plaintiff was informed she was denied due to an alleged failure to submit a complete package because the 4506-T was missing; however, this document was submitted on March 27, 2013. Plaintiff's representative was informed that the file had been rejected as of April 12, 2013. However, when Plaintiff's representative Liz Gomez contacted the bank the week on the 16th of April there were not any missing documents. She was informed that new package must be submitted.

41. On or about, May 6, 2013, Jessica Angel of Consumer Care Law Group faxed

over a complete new loan modification application as requested.

42. On May 17, 2013, Michael Johnson and /or his representatives called Smith, to receive an update on the loan modification application. Smith stated she could not speak to them, but would not state why and terminated the call.

43. On or about May 20, 2013, Michael Johnson and/or his representatives called and left a voicemail for Smith to receive an update on the modification. This call was never returned.

44. On or about May 20, 2013, they then contacted Michelle Diggs, Smith's supervisor and who also stated they could not speak to them.

45. On or about May 21, 2013, Michael Johnson and/or his representatives spoke with Jamie Incarnacion, who again stated she could not discuss the file.

46. On or about May 21, 2013, Michael Johnson and/or his representatives spoke with Tina May in the Executive Offices, in attempt to receive the information. They also spoke to Lori Meyers, Brenda Smith (the supervisor of Lori Meyers), Ariel Rashana Brown, and Haley Blokership. See *Exhibit 8*: Letter to Chase re: failure to communicate.

47. On or about May 22, 2013, Michael Johnson of Consumer Law Group faxed a letter to Chase informing them that they attempted to contact Smith, several times. and May 20. They enclosed their letter of authorization with the letter, although this was previously submitted to Chase on March 27, 2013.

48. On or about May 27, 2013, Plaintiff submitted an application for a loan modification through Consumer Law Group.

49. On or about May 31, 2013, Plaintiff received a letter acknowledging receipt of her inquiry about her loan from Chase.

50. On or about June 5, 2013, Plaintiff received a letter that Chase had received her request for a modification; it had completed two reviews, and determined that she is not eligible for HAMP or any other modification program.

51. On or about June 25, 2013, Plaintiff received an acknowledgement of receipt of her HAMP modification application.

52. On or about June 26, 2013, Plaintiff received a letter that stated her Customer Assistance Specialist ("Specific Point of Contact" hereinafter "SPOC") would be Roslyn

Austin-Glover.

53. On or about July 17, 2013, Plaintiff became informed that her loan would be transferring from CHASE to SPS effective August 01, 2013.

54. On or about August 19, 2013, Plaintiff submitted documents to SPS to be considered for a loan modification.  Plaintiff never received a notice of acknowledgement of receipt, request for additional documents (except on September 18th), or a letter of decision

55. On or about September 18, 2013, Lea, representative of SPS, requested additional documents for Plaintiff's review. She requested a property insurance statement and a tax insurance statement. Plaintiff is informed and believes that all documents requested were promptly submitted.

56. On or about September 18, 2013, Iris contacted John of SPS to confirm receipt of the letter of authorization and discuss the financial interview that was needed to proceed with the loan modification request.

57. On or about October 9, 2013, Plaintiff's representative spoke with Jaclyn of SPS to discuss the financials; however the call was dropped prior to the completion of their call. Plaintiff's representative then called back that same day and spoke with Paniyuy who stated Plaintiff was eligible for the HAMP $1000 incentive for on time payments.

58. On or about November 14, 2013, SPS sent Plaintiff a denial letter for failure to turn in documents. However, all documents were timely sent to SPS. This was a bad faith denial. Plaintiff alleges she timely appealed the denial and submitted all requested documents.

59. On or about February 12, 2014, a Notice of Trustee Sale was recorded. The recording was requested by ALAW and it was mailed to ALAW. The trustee sale number is 257178CA. The sale was scheduled for 2/12/14 at 11:00 am.

60. On or about February 18, 2014, Plaintiff retained Stephen R. Golden & Associates ("SRG").

61. On or about February 18, 2014, representatives from SRG faxed to SPS a letter of authorization.

62. On or about March 3, 2014, the letter of authorization was resubmitted to SPS in addition to a qualified written request.

63. On or about, March 5, 2014, a complete first lien loan modification application was submitted to SPS by SRG.

64. On or about March 11 & 18, 2014, SPS sent notice of receipt of the letter of authorization and acknowledged SRG's representation of Plaintiff.

65. On or about March 31, 2014, Plaintiff received an advertisement from a Foreclosure Defense company informing her of her sale date. However, Plaintiff never received notice of this sale date from SPS.

66. On or about, April 10, 2014, SPS sent Plaintiff a letter informing her that it is willing to review for a modification and providing blank documents for her to submit. However, she had already submitted all of the documents to SPS in September and March.

67. On or about April 29, 2014, Plaintiff received a Notice of Postponement , dated April 25, 2014, informing her that her sale date had been postponed until June 10, 2014.

68. On or about April 2, 2014, SPS provided an inadequate response to Plaintiff's qualified written request.

69. On or about May 2, 2014, Plaintiff received a letter from SPS dated April 24, 2014, requesting additional documents that had previously been submitted.

70. Based on the HAMP eligibility requirements, Plaintiff qualified for HAMP and should have been reviewed for this modification. An analysis of the eligibility requirements is below:

    a. *Plaintiff obtained her mortgage prior to January 1, 2009; given the Deed of Trust and Note were executed and recorded in 2007.*

    b. *Plaintiff owes less than $729,750 on his primary residence, given the principal loan amount was only $568,000 and the principal balance owed as of January 2014 was $563,970.37.*

    c. *Plaintiff's property has not been condemned, given there is no record of such with the Los Angeles County Recorder's Office.*

    d. *Plaintiff has experienced financial hardship, given she was unemployed for*

*a period of time.*

    e. *Plaintiff has sufficient documentation to support a modified payment; given she has bank statements and tax returns showing sufficient income.*

    f. *Lastly, Plaintiff has not been convicted of any of the 6 enumerated felonies in connection with mortgage or real estate transactions that preclude HAMP eligibility.*

71.     *From about April 2014 until the present, all documents have been submitted directly through Counsel and the bank, as agreed for the continuation of the review of Plaintiff's loan modification.*

72.     *On or about July 31, 2014, Plaintiff was denied a loan modification. However, the income figures used were completely inaccurate, if not fabricated by SPS in order to deny Plaintiff her right to a fair review. Plaintiff appealed the denial on this basis and is currently under review.*

## FIRST CAUSE OF ACTION FOR PREDATORY LENDING & OTHER LENDING VIOLATIONS
### (AGAINST CHASE)

73.     Plaintiff restates and reasserts each and every allegation set forth in in this complaint as if fully set forth in this count.

74.     Chase failed to remedy lending violations when Consumer Care Law Group informed it of the many violations they believed were present. As the purported successor in interest or assignee of the beneficial interest of Plaintiff's loan and/or the rights to service the loan Chase had a duty to investigate the claims presented by Chase. Chase failed to do so and it thus is liable for these violations which include: the loan terms were misrepresented at the time of application, the income was inflated, the appraisal was falsely inflated, signatures were forged, a notary was not present to witness Plaintiff's signature, in addition to other concerns.

75.     Chase's Liability: Chase is liable as a successor in interest to AMN.

76.     Lending Violations: AMN made material misrepresentations through its employee and/or agent to Plaintiff. It misrepresented the interest rate of the loan and her

income was grossly inflated. The representative stated she had a fixed interest rate. Plaintiff was then shocked when she saw her interest rate increase to almost 11% as to remaining at 6%. She in fact had a 5/1 Arm, so her interest rate would change every year after the first five years. She was never informed of this. Further, the loan application listed her income as $12, 300, which is grossly inaccurate. She worked at Staples at the time and earned about $300 a week. Plaintiff has no idea where this income amount came from. Further, Plaintiff specifically requested a fixed interest rate. She purchased the home from a family member who was selling it because the interest rate continued to increase and she did not want to be in that same situation. She conveyed this information to AMN representatives.  See *Exhibit 1*: *Uniform Residential Loan Application*

## SECOND CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CIVIL CODE §2924f
### (AGAINST CHASE)

77.    Plaintiff restates and reasserts each and every allegation set forth in in this complaint as if fully set forth in this count.

78.    Pursuant to the law as written in 2012, Chase is in violation of the above listed statutes. Chase was informed of its violation when Consumer Care Law Group sent it a letter in November of 2012. Chase took no steps to remedy this violation and continued the same course of conduct.

79.    Pursuant to California Civil Code §2924f(c)(3): "A copy of the notice of sale shall also be posted in a conspicuous place on the property to be sold at least 20 days before the date of sale, where possible and where not restricted for any reason. If the property is a single-family residence the posting shall be on a door of the residence."

80.    In 2012, Michael Wallace Johnson, sent CHASA a letter informing it that it was in violation of this statute. In the letter, Michael wrote, "NOEMI PENALOZA was not served properly with trustee sales information 20 days prior to the foreclosure sale/ auction date.  Therefore the sale is out of compliance with California law. We need full cooperation to our request or a civil suit and complaint may ensue." ***Exhibit 6***: *Letter to Chase about 2924f Violation.*

81.    The notice of trustee sale was recorded November 16, 2012. The sale was scheduled for December 7, 2012. The notice of sale was posted to Plaintiff's door on December 7, 2012.

## THIRD CAUSE OF ACTION FOR UNFAIR, FRAUDULENT BUSINESS PRACTICE

*Violation of California Business & Professional Code §17200, et seq.*

### (AGAINST ALL DEFENDANTS)

82.    Plaintiff restates and reasserts each and every allegation set forth in in this complaint as if fully set forth in this count.

83.    Plaintiff is informed and believes and thereon alleges that the acts of Defendants as above alleged constitute unlawful deceit within the meaning of the term under California law, and therefore, among other reasons, violates *California Business & Professions Code §17200, et seq.* by committing unfair and/or fraudulent business practices.

84.    *California Business & Professions Code §17200, et seq.* prohibits any "unlawful, unfair or fraudulent business act or practice"… A single act is actionable.  The violations of *California Civil Code* described herein pled is an unfair business practices and at the same time forbidden by law.  Such unfair practices offend established public policy and the practice is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

**UCL Standing**

85.    UCL Standing requires, (1) injury in fact, (2) economic injury, and (3) a causal connection between economic injury and the alleged misconduct.

86.    **Injury**: Plaintiff has been injured in fact because she has been threatened with loss of her home. She has suffered mental and emotional distress.

87.    **Economic Injury**: She has incurred significant legal fees and costs. She has suffered negative reports on credit. She has been unable to qualify for other loans that could assist in resolving this conflict.

88.    **Causal Connection**: if the misrepresentations were not made then Plaintiff

would not have executed the loan agreement. Further, if Chase had not misrepresented that it completed two reviews then Plaintiff could have actually been reviewed. Had this conduct not been perpetrated by Defendants then she would not have suffered negatives to her credit and incurred late fees.

## Predicate Violation: Statutory Violations,Intentional & Negligent Misrepresentation

### *Statutory Violations*

89.    Plaintiff hereby includes all of the statutory violations committed by Defendants and pled in this complaint as predicate violations under the UCL.

### *Intentional Misrepresentation*

90.    **Misrepresentation**: Chase represented to Plaintiff that her application was complete and under review.

    a.  <u>Who made the representation</u>: Chase representative Denise

    b.  <u>Authority to Speak</u>: Denise represented that she had either express, implied, or apparent authority to speak.

    c.  <u>How or by what means was the representation made</u>: over the phone.

    d.  <u>When was the representation made</u>: On or about April 16, 2013.and April 26, 2014.

    e.  <u>Where was the representation made</u>: Consumer Care Law Group's Place of business and Chase's Place of Business (loss mitigation call center).

    f.  <u>To whom was the representation made</u>:  Plaintiff's representatives Iris and Liz Gomez from Consumer Law Group.

91.    **False or Misleading Aspect of the Representation**: On May 3, 2013, Plaintiff's representative spoke with Chase representative Jennifer who stated the file is currently in foreclosure and as of April 12, 2014, the loan modification was denied because it was purportedly missing form 4506T. Jennifer then advised Plaintiff's representative that a new application must be submitted with a complete package before the file can be open for review.  The statement made on April 16, 2014, was false or this latter statement was false.

92.    **Materiality of the false representation**: this was material because Plaintiff

and her representative relied on this statement. Had they been informed that any documents were missing they would have been promptly submitted in order to have a complete package and be thoroughly reviewed.

93.    **Misrepresentation**: Northeast Financial represented to Plaintiff that she would have a fixed interest rate and it listed an inflated monthly income of $13,200.00 .

a.  <u>Who made the representation</u>: Northeast Financial representative Joe Elizondo

b.  <u>Authority to Speak</u>: The agent represented that he had either express, implied, or apparent authority to speak.

c.  <u>How or by what means was the representation made</u>: In person and in writing.

d.  <u>When was the representation made</u>: In or about January 2007.

e.  <u>Where was the representation made</u>: Plaintiff believes at Northeast Financials' Place of business located at 1108 East Colorado Street, Los Angeles, CA 90041.

f.  <u>To whom was the representation made</u>:  to Plaintiff.

94.    **False or Misleading Aspect of the Representation**: These representations were false because Plaintiff only made $300 a week at Staples and the loan agreement stated the interest rate would increase every year after the first five years.

95.    **Materiality of the false representation**: these representations were material because Plaintiff relied on them. Had she been informed that any documents that the interest rate was in fact not fixed but would change annually and that they used an inflated income on the application then she would not have executed the agreement because she would have known she would be unable to afford the loan.

*Negligent Misrepresentation*

96.    <u>**Misrepresentation of Material Fact**</u>: The above described representations were material because they concerned the monthly payment amounts due under the loan agreement as well as the results of her loan modification. Specifically, the representations were that her interest rate would be fixed, when in fact it increased from 6% to 11%, that her monthly income was $12,300, and that her loan modification was still under review

when in fact they had purportedly already declined it.

97.   **No Reasonable Ground for Believing Representation to be True:** Defendant knew the loan documents actually said contradicting information as they were the drafting party and Defendant had all the necessary information to provide the update already in their system. Further, Defendant knew her income was not as it had listed based on the documentation she provided them.

98.   **Intent that Plaintiff Rely:** Defendant intended that Plaintiff rely on the executed agreement because they willing entered into it with Plaintiff and the payments were presented to Plaintiff as an amount that she could afford. Defendant further intended Plaintiff rely on its representations because they were the party with greater information and had an advantage over Plaintiffs.

99.   **Justifiable Reliance:**  Plaintiff was justified in her reliance on the representative's statement that her interest rate would be fixed as Defendant entered into the agreement with her. Plaintiff was further justified in her reliance because Defendant was the sole party with the information as to the status of the loan modification.

## FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT
## (AGAINST ALL DEFENDANTS)

100.   Plaintiff restates and reasserts each and every allegation set forth in in this complaint as if fully set forth in this count.

**Breach of Contract**

101.   A claim for breach of contract requires that a plaintiff plead: (1) the existence of a contract, (2) a breach of the contract by defendant, (3) performance or excuse of non-performance on behalf of the plaintiff, and (4) damages suffered by the plaintiff as a result of the defendant's breach.

102.   **Contract:** The subject mortgage loan, comprised of the subject Promissory Note and subject Deed of Trust, constituted a contract between Plaintiff and **AMN,** and its purported successors. ***See Exhibit 2: Deed of Trust***

103.   **Breach 1:** Pursuant to Paragraph 20 of the subject Deed of Trust, "If there is a change of the Loan Servicer, Borrower shall be given written notice of the change

which will state the name and address of the new Loan Servicer, the address to which any payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing."

104.   Plaintiff was never sent any written notice of change of loan servicer. Accordingly, the information required by the subject Deed of Trust could not have been included in any purported notice.

105.   Plaintiff is informed and believes and thereon alleges that the loan was first assigned to another servicer prior to the date that Plaintiff's last mortgage payment was accepted.

106.   In February of 2007, Plaintiff's loan was with AMN. Sometime between 2007 and 2011, the servicing rights were purportedly transferred to Chase and who knows what other entities. Plaintiff has not received any information about these transfers and sent SPS a qualified written request to acquire this information, yet did not receive it in SPS's response.

107.   **Breach 2 & 3**: Pursuant to Paragraph 22 of the Deed of Trust, "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument[.]"  The provision continues, stating that: "The Notice shall specify (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and *the right to bring a court action to assert the non-existence of a default or any other defense* of Borrower to acceleration and sale." (emphasis added).

108.   The Notice of Defaults failed to include this material statement that **AMN**, and its successors, agreed to make therein.  The "right to bring a court action" was significant consideration in entering this agreement.  This material omission constituted a breach of the agreement. The notice also failed to provide the date the alleged default must be cured and that failure to cure could result in acceleration. These breaches

occurred on or about the dates the notices were recorded which were 6/13/2011 and 7/26/2012.

109.   **Performance:** By making payments on the subject loan, Plaintiff has performed her obligation under the promissory note.  In Plaintiff's qualified written request to SPS she requested a printout of all of the amounts paid and this was not provided.

110.   **Excuse for Non-Performance:** Plaintiff is excused from further performance on the contract as of the date of these breaches. The first breach occurred between 2007 and 2011. The latter breaches occurred 7/26/2012 and 6/13/2011, the dates of the recording of the notice of default. Plaintiff was therefore excused from performance on or before 6/13/2011. Plaintiff discontinued performance in or about 2011.

111.   **Damages:** As a result of Defendants' breach, Plaintiff has suffered injuries and has been caused to suffer the threat of loss of their home.  Moreover, Defendants induced Plaintiff to forbear from challenging the alleged default contained in the Notice of Default or to defenses to foreclosure at that time.  Plaintiff has incurred, and continues to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong. Plaintiff has also suffered negative reports to her credit.

**Breach of Implied Covenant of Good Faith & Fair Dealing**

112.   Every contract also contains an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. Defendants have breached th

113.   The elements of the tortious breach of the implied covenant of good faith and fair dealing which a plaintiff should prove are: (1) assertion of a right or denial of an obligation (2) made in bad faith (with actual knowledge that the claim or denial has no foundation) and unreasonably (where a reasonable person under the circumstances would find the claim or denial groundless) (3) that obstructs the injured party's ability to receive the substitutionary value of the agreement.

114.   **Assertion of a Right**: Plaintiff asserted her right to be reviewed for a loan modification as required under the homeowner bill of rights and codified in California

Civil Code §§2920 et seq. This right was asserted when she submitted the application packages to Defendants. Pursuant to CCC §2923.6(g), a borrower must be "afforded a fair opportunity to be evaluated for a first lien loan modification."

115.   **Bad Faith Denial of an Obligation**: In bad faith Chase declined to review Plaintiff for a loan modification alleging it had completed reviews when it knew those statements were entirely false. Chase had actual knowledge that these statements were false because its representatives has access to Plaintiff's files and could clearly see a complete review had not been completed.

116.   **Obstruction of Ability to Receive Value of Agreement**: This action by Chase obstructed Plaintiff's right to receive a fair review as required under the statute. Plaintiff only seeks to maintain possession of her home and provide Defendant with any monies that are purportedly owed.

**Tortious Breach of Contract**

117.   A contractual obligation may create a legal duty and the breach of that duty may support an action in tort. Conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law. Tort damages have been permitted in contract cases where the contract was fraudulently induced.  The duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm.

118.   A tortious breach of contract may be found when (1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion or; (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship, or substantial consequential damages.

119.   Chase committed fraud by making material misrepresentations to Plaintiff and breaching the agreement. Chase used deceit by misstating facts as to the status of her loan application and stating that it had reviewed her completely when it had not. Chase knew its breaches and its bad faith could cause severe harm to Plaintiff because her home

was in jeopardy along with her credit. This has caused great personal hardship to her due to legal expenses and costs and Chase should be held responsible for these damages.

## FIFTH CAUSE OF ACTION FOR QUIET TITLE
### (AGAINST ALL DEFENDANTS)

120.   Plaintiff restates and reasserts each and every allegation set forth in in this complaint as if fully set forth in this count.

121.   Plaintiff seeks to Quiet Title against the claims on the subject property of all Defendants, including Doe Defendants, inclusive.  Defendants' claims are without any right, and Defendants have no right, title, estate, lien or interest in the subject property.

122.   Plaintiff name as Defendants in this count all persons unknown, claiming (a) any legal or equitable right, title, estate, lien or interest in the subject property adverse to Plaintiff' title, or (b) any cloud on Plaintiff' title to the subject property.  The claims of each unknown Defendant are without any right, and these Defendants have no estate, right, title, lien or interest in the subject property.

123.   Plaintiff's claim for Quiet Title is based upon the facts set forth above which allegations are incorporated herein by this reference and facts stated below.

124.   Defendants have no enforceable estate, right, title, lien or interest in the subject property.

125.   The only right Defendants have in Plaintiff's PROPERTY, if any, is an unenforceable contract that is no longer tied to an obligation to enforce its contractual terms over. AMN failed to transfer an enforceable beneficial interest in the Deed of Trust to Defendants because it maintained interest in the Note, it failed to negotiate the loan or the Note, and it lacked the capacity to negotiate the Note because it did not have an entire interest in the Note per UCC 203(d), given the Intangible Interest in the Note had already been transferred to multiple classes of a securitized Trust.

126.   The only right Defendants possess, if any, is an unenforceable right in the Note because it does not have the entire interest in the Note. Further, ownership of the Intangible Interest cannot be rejoined with the Note and Deed of Trust because the multiple classes have not been named as payee and the classes of the Trust, its officers,

and its agents are prohibited from accepting assets on behalf of the Trust after the Trust's closing date, which was September 3, 2004.

127.   Plaintiff has been thereby damaged, and has a substantial ascertainable loss. Plaintiff desire, and are entitled to a judicial declaration quieting title in and to the subject property.

## SIXTH CAUSE OF ACTION FOR VIOLATION OF REAL ESTATE
## SETTLEMENT PROCEDURES ACT
### (AGAINST ALL DEFENDANTS)

128.   Plaintiff restates and reasserts each and every allegation set forth in in this complaint as if fully set forth in this count.

129.   On multiple occasions Plaintiff submitted qualified written requests to Chase and SPS through Consumer Law Care Group and The Law Office of Stephen R. Golden & Associates.  The duties of **Chase and SPS** under 12 U.S.C. §2605 Title 12, Chapter 27 Section (e) in response to a RESPA letter are as follows:

130.   On November 15, 2012, Plaintiff submitted a qualified written request to Chase and on December 4, 2012, Chase sent Plaintiff a response from Chase to her qualified written request.

131.   On February 3, 2014, Plaintiff submitted a qualified written request to SPS and on April 2, 2014 SPS sent Plaintiff a response.

132.   RESPA requires that once a borrower makes a QWR, loan servicing companies must: (a) provide written notice to the borrower acknowledging receipt of the request; (b) take appropriate action with respect to the inquiry either by making corrections or providing a written explanation or clarification; and (c) protect the borrower's credit rating by not reporting to credit bureaus the overdue payments relating to the request for 60 days after receiving the request. *Hutchinson v. Del. Sav. Bank FSB,* 410 F. Supp. 2d 374, 382 (D.N.J. 2006); *see also,* 12 U.S.C. § 2605(e) (delineating the duties of loan servicers to respond to borrower inquiries). "Whoever fails to comply with any provision of this section shall be liable to the borrower for . . . (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages . . . in the case of a pattern or practice of noncompliance with the requirements of this section . .

. ." 12 U.S.C. § 2605(f)(1). *Hawkins v. Homecomings Fin., LLC*, 2010 U.S. Dist. LEXIS 50014 (C.D. Cal. Apr. 26, 2010).

133.   RESPA places a duty on loan servicers to respond to certain inquiries from borrowers about their loan. *See* 12 U.S.C. § 2605(e). This duty is triggered when the servicer receives a "qualified written request" ("QWR") from a borrower. 12 U.S.C. § 2605(e)(1)(A). A QWR is defined as a "written request from the borrower (or an agent of the borrower) for information relating to the servicing of [the borrower's] loan." 12 U.S.C. § 2605(e)(1)(A).

134.   Plaintiffs' RESPA claim does not fail if: it alleges to whom specifically Plaintiff sent the QWRs, how Defendants failed to adequately respond, the content of the QWRs, that the QWRs sought information related to the servicing of their loan, and that the failure to respond directly and proximately caused actual pecuniary damage. *See, e.g.,* *Hawkins v. Homecomings Fin., LLC*, 2010 WL 546372, at*3-4 (C.D. Cal. Feb. 8, 2010). *See **Exhibit 3**: 12 U.S.C. §2605(e)-(f).*

### *LEGAL CORRESPONDENCE WAS A QUALIFIED WRITTEN REQUEST*

135.   Plaintiff alleges that the correspondences she sent were qualified written requests pursuant to 12 U.S.C. §2605(e)(1)(B).

136.   Under 12 U.S.C. §2605(e)(1)(B) , "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that— **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

137.   Plaintiffs' satisfied the requirements of 12 U.S.C. §2605(e)(1)(B)  because their QWRs included: (1) information to identify themselves, such as their loan number, their names, and their property address, and (2) sufficient detail of the information sought, Plaintiffs listed specific documents they wanted to receive such as the Deed of Trust, the Note, and any Notices of Foreclosure or Sales, in addition to other documents. See ***Exhibit 4**: Qualified Written Request- Sent to Chase* and ***Exhibit 5**: Qualified Written Request- Sent to SPS.*

### *WHOM QUALIFIED WRITTEN REQUEST SENT TO*

138.   Plaintiff alleges that the qualified written requests were sent to Chase & SPS.

### *WHEN QUALIFIED WRITTEN REQUEST SENT AND RECEIVED*

*139.*   The QWRs were sent on November 15, 2012 and December 5, 2012. The QWR sent to SPS was received on the same day it was sent. See the last page of **Exhibit 5**, which is a fax confirmation showing the date and time it was sent and that it was transmitted. The QWR sent to Chase was received by Chase on or before December 4, 2012, which is the date of their response. Further they reference receipt of the QWR.

### *CONTENT OF THE QUALIFIED WRITTEN REQUEST*

140.   The content of Qualified Written Request can be seen in the following exhibits. See **Exhibits** *4 and 5.*

### *SERVICE RELATED QUESTIONS IN THE QUALIFIED WRITTEN REQUEST*

141.   As seen in the **Exhibit 5** the qualified written requests did in fact seek information relating to the servicing of Plaintiff's loan because page 7 of the QWR requested information about servicing systems and on pages 14 through 16 there is an entire section listing 24 service related questions.

142.   Further, **Exhibit** 4 also list service related questions on pages 9, 17, 18, and 19.

### *DEFENDANTS' BREACH*

*143.*   Defendants failed to provide confirmation of receipt within 5 days as required by 12 U.S.C. §2605(e)(1)(A). Defendants have also failed to provide Plaintiffs with a written explanation of why they believe the account of the borrowers is correct in violation of 12 U.S.C. §2605(e)(1)(B). Further Defendant has failed to provide the information requested by the borrowers and/or an explanation of why the information is unavailable in violation of 12 U.S.C. §2605(e)(1)(C). Lastly, Defendants failed to cure the breach once they became aware in violation of 12 U.S.C. §2605(f)(4) because they became aware of the breach either on or before the filing of the initial complaint. *See* **Exhibit 3**: *12 U.S.C. §2605(e)-(f).*

### *DAMAGES & COSTS*

144.  In *Hutchinson v. Del.Sav. Bank FSB*, the court "h[e]ld that Plaintiffs have sufficiently pled actual damages resulting from the breach of RESPA duties. Aurora allegedly reported Plaintiff's delinquent Loan Two payments to credit bureaus during the 60 day statutory period after it received Plaintiffs' qualified written request. As a result of these negative reports, Plaintiffs allege that they suffered "negative credit ratings on their credit reports [and] the inability to obtain and borrow another mortgage loan and other financing." (Amend. Compl. at P89) Thus Plaintiffs' inability to obtain further financing allegedly flowed directly from Aurora's breach of its duty under 12 U.S.C. § 2605(e)(3) to refrain from reporting the late payments to credit bureaus. As the court in Cortez held, "denial of credit because of the reporting of [delinquent charges] to credit reporting agencies" can sustain a claim of actual damages under RESPA. Cortez, 2000 U.S. Dist. LEXIS 5705 at *39-40. Accordingly, Aurora's motion to dismiss the RESPA claim will be denied." *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp.2d 374, 383 (D.N.J. 2006).

145.  The court further noted, "It is unclear whether "actual damages" under RESPA encompasses emotional distress. The district courts are split and no Court of Appeals has addressed the issue. *See, e.g.,Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809, 814-16 (N.D. Ill. 2001)(concluding that RESPA plaintiffs may recover for mental suffering); *Ploog v. Homeside Lending, Inc.*,209 F. Supp. 2d 863, 870 (N.D. Ill. 2002) (following *Johnstone*); *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F. Supp. 2d 1156, 1166 (M.D. Ala. 1999) ("'actual damages' [under RESPA] . . . encompass mental anguish damages."); *contra Katz v. Dime Savings Bank, FSB*, 992 F. Supp. 250, 255-56 (W.D.N.Y. 1997) (concluding that Congress did not intend actual damages to encompass emotional distress); *In re Tomasevic*, 273 B.R. 682, 687 (M.D. Fla. 2002)("Actual damages are limited to economic pecuniary injury.")(following *Katz); see generally* George S. Mahaffey, Jr., *A Product of Compromise: Why Non-Pecuniary Damages Should Not Be Recoverable under Section 2605 of the Real Estate Settlement Procedures Act*, 28 U. Dayton L. Rev. 1 (2002)(analyzing RESPA's legislative history and case law interpreting statute). Because we hold that Plaintiffs in this case have stated a claim under RESPA independent of their allegations of emotional distress, the Court declines to decide at this stage of the litigation whether Plaintiffs may recover damages

for emotional distress in addition to damages for pecuniary loss." *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)

146.   Plaintiff alleges that she has suffered from negative reports on her credit that have prevented her from obtaining and borrowing another mortgage loan and she has been unable to pursue other financing options.

147.   Plaintiff is informed, believes, and thereon alleges that Defendant reported late or missing payments to credit agencies within the 60 day period post the submission of the qualified written request in violation of 12 U.S.C. §2605(e)(3).

148.   Plaintiff is informed, believes, and thereon alleges that Defendant failed to timely pay the taxes and property insurance. *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1305 (S.D. Fla. 2009).

149.   Plaintiff has also incurred legal expenses in order to right the wrongs that Defendants have committed. These amounts include a retainer fee, attorney hours, court fees, and fees for service of process.  The exact amounts of these costs can and will be produced at the court's request. Plaintiff has incurred these expenses for at least two attorneys. Plaintiff is entitled to her actual damages pursuant to 12 U.S.C. §2605(f)(1)(A) and to her costs and attorney's fees in pursuing this action pursuant to 12 U.S.C. §2605(f)(3).

150.   Plaintiff has also suffered from emotional distress as a result of Defendants' disregard for their rights and the law. *Johnstone v Bank of Am., N.A.* (2001, ND Ill) 173 F Supp 2d 809.

151.   But for Defendants' failure to comply with the RESPA requirements Plaintiff would not have suffered these losses.

152.   "Plaintiffs allege that they sent written requests to PNC for information relating to the loans, and that PNC failed to take action with respect to these requests. Compl. PP 148-157. PNC says that Plaintiffs' RESPA claim fails because Plaintiffs have failed to plead actual, pecuniary damages, which PNC says are an essential element of a RESPA claim. This court is unpersuaded that actual, pecuniary damages must be pled...The statute expressly requires the existence of damages caused by a mortgage servicer's failure to take action; it does not expressly require allegations in a

pleading.   Nonetheless, a number of courts have interpreted the statute  as requiring a plaintiff to allege pecuniary damages to state a claim. A pleading requirement has the effect of limiting a RESPA claim to circumstances in which a plaintiff can show that a mortgage servicer's failure has caused actual harm. Although Plaintiffs do not allege details of how any RESPA violation caused them pecuniary loss, they do allege actual damages, saying they need discovery before stating the amount of loss caused by the violation. That is sufficient at this stage of the case [12(b)(6) Motion], even assuming RESPA includes a pleading requirement. Of course, if Plaintiffs are unable to show, in a summary judgment proceeding, actual damages resulting from the RESPA violations, they may find their RESPA claim at an end."*Agustin v. PNC Fin. Servs. Group*, 707 F. Supp. 2d 1080, 1091-1092 (D. Haw. 2010). Plaintiffs need discovery before stating the amount of loss caused by the violation.

153.   Therefore, Plaintiff has alleged actual damages, given she has listed the losses she has suffered and has stated she will need discovery in order to state the exact amount of the harm caused by Defendants' failure to comply.

## SEVENTH CAUSE OF ACTION FOR VIOLATION OF *CIVIL CODE* §§2923.6(c) (ANTI-DUAL TRACKING)
### (AGAINST SPS)

154.   Plaintiff restates and reasserts each and every allegation set forth in in this complaint as if fully set forth in this count.

155. Civil Code §2923.6(c) prohibits a mortgage servicer from recording an **NOD** or **NOTS** *while* a complete loan modification application is pending. Plaintiff has applied for numerous loan modifications, but has never received a fair review. For the majority of her applications she has never received a written denial letter, which is why she simply resubmitted the loan modification. On two occasions she received a denial for a purported failure to submit documents. However, those documents were timely submitted and confirmation of their receipt has been obtained. For the last review, Plaintiff was denied because she is purportedly ineligible. However, this directly contradicts statements that SPS representatives have made and the information used for the review was inaccurate.

156. Between 2012 and 2013, Plaintiff's monthly expenses, increased from

$5,276.00 to $8929.53. Between 2013 and 2014, Plaintiff's monthly expenses decreased from $8929.53 to $7317.95. This is a material change of circumstances. Although, this amount is higher that her expenses in 2012, her income increased significantly to offset this change.  In 2012 her income was $4,800.00. In 2013, it increased to $10,519.29. In 2014, it decreased to $10,148.70. The increase in her income and the decrease in her expenses have enabled Plaintiff to be able to afford the monthly payments; however, Defendant has not completed a fair review of her file, which would show she qualifies for either a forbearance (a reinstatement with payment towards any arrears) or a permanent loan modification. Plaintiff notified SPS of this when it submitted a new loan modification package to SPS.

157. Plaintiff submitted a complete application for a first lien loan modification offered to **SPS** on August 19, 2013. Plaintiff submitted all additional requested documents as requested in September 2013. Plaintiff was denied in November of 2013 and Plaintiff timely appealed this denial.

158. The Notice of Trustee Sale was recorded February 12, 2014. Plaintiff never received a written denial of her appeal. SPS has violated dual tracking.

159. **SPS** representative Jones affirmed that Plaintiff's file was still under active review.

160. As a direct and proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the **PROPERTY** including attorneys' fees and other time, effort and expense to have the sale-dates of the **PROPERTY** postponed.  Had Defendants complied with the Anti-Dual Tracking provisions of the *Civil Code*, these expenses would have been unnecessary.

161.  Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff' title to the **PROPERTY** has been removed.  The amounts of future expenses and damages are not ascertainable at this time.

## EIGHTH CAUSE OF ACTION FOR VIOLATION OF CIVIL CODE §2924.10(a)
### (AGAINST SPS)

The Defendants Violated The HBOR, *Civil Code* § 2924.10(a), Which Requires a

Written Acknowledgment of Receipt of a Lien Modification Application

162.    Plaintiff restates and reasserts each and every allegation set forth in in this complaint as if fully set forth in this count.

163.    California *Civil Code* § 2924.10(a) states in pertinent part:

"When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgement of the receipt of the documentation within five business days of receipt."

164.    *Civil Code* § 2924.10(b) states that a loan mod is deemed "complete" when the borrower has supplied the mortgage servicer with all the documents required by the mortgage servicer with the reasonable timeframes specified by Servicer.

165.    Here, the Plaintiff has submitted a complete -- "complete" because they submitted everything that Defendants requested of them -- loan modification application (at least once), but the Defendants, who are undeniably involved in a high volume of foreclosures, did not provide Plaintiff with any written confirmation.  Not only that, but Defendants requested the same documents-more than once, evidently "misplacing" or "losing" these confidential financial and personal records.

166.    On March 5, 2014, Plaintiff submitted a complete loan modification package to Defendant. On April 10, 2014, Defendant requested Plaintiff submit documents that she previously submitted to them. Defendant never provided an acknowledgment of receipt of her application within 5 days post her submission. Plaintiff knows the documents were received by Defendant, given the confirmation of the fax. Further Plaintiff received an acknowledgement of receipt of her letter of authorization, which was also sent directly to Char Cave at the same fax number(s) just two days earlier. See *Exhibit 7*: Faxes Sent to Char Cave 3/3/2014 & 3/5/2014

## NINTH CAUSE OF ACTION FOR VIOLATION OF *CIVIL CODE* §2924(a)(5)
## (AGAINST ALL DEFENDANTS)
The Defendants Violated The HBOR, *Civil Code* § 2924(a)(5), Which Requires Written Notice of Sale Dates

167.   Plaintiff restates and reasserts each and every allegation set forth in in this complaint as if fully set forth in this count.

168.   California *Civil Code* § 2924(a)(5), provides, in pertinent part:

"[W]henever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within five business days following the postponement."

169.   Even though Plaintiff was engaged in negotiations for modification with Defendants, the Defendants nevertheless posted a foreclosure sale dates and continued the foreclosure process.

170.   The proposed sales of the Subject Property were pursuant to Section 2924g, which governs "[a]ll sales of property under the power of sale contained in any deed of trust or mortgage . . ."

171.   The postponements were for more than ten (10) days.  However, Plaintiff never received the property notice as required, if any.

172.   Plaintiff never received notice from Defendant that her trustee sale scheduled for February 12, 2014 was postponed. She received an advertisement on March 31, 2013 notating a trustee sale date of May 8, 2014.  This is clearly more than 10 business days. Plaintiff has been prejudiced by Defendant's negligent or willful failure to comply with statutory guidelines.

173.   In *Giannotta Properties*, the court found that there was not sufficient prejudice to set aside a foreclosure sale when the borrower was not given notice that the foreclosure sale was postponed 6 hours. "Where the borrower received adequate notice of the foreclosure sale, a slight procedural irregularity in the foreclosure process that does not prejudice the borrower does not entitle the borrower to set aside the foreclosure. *Knapp v. Doherty,* 123 Cal.App.4[th] 76, 20 Cal.Rptr.3d 1, 13-17 (2004)." Giannotta Properties, Inc. v. Barbaccia, 146 Fed.Appx. 97, 99 (C.A.9 (Cal.),2005). This case significantly differs from Giannotta in that the sale was postponed for months and Plaintiff heard of the new sale date via an advertisement from an attorney. Other sale dates Plaintiff had no knowledge of.

174.   In *Knapp v. Doherty*, the court found that there was not sufficient prejudice to set aside the sale when the borrower was given premature notice. "Borrowers' objection to the premature notice is, in effect, a criticism that the trustee provided *too much notice* of the sale. There is no evidence that they were prejudiced by the premature mailing of the notice." Knapp v. Doherty, 123 Cal.App.4th 76, 96, 20 Cal.Rptr.3d 1, 16 (Cal.App. 6 Dist.,2004). This case is significantly different from Knapp in that Plaintiff was not given premature notice nor late notice. In fact, Plaintiff was not given any notice from Defendants of the sale dates.

175.   The court in "Residential Capital v. Cal–Western Reconveyance Corp. (2003) 108 Cal.App.4th 807, 819, 822, 134 Cal.Rptr.2d 162 [the question is whether 'there is a substantial defect in the statutory procedure that is prejudicial to the interests of the trustor and claimants.'" Knapp v. Doherty, 123 Cal.App.4th 76, 96, 20 Cal.Rptr.3d 1, 16 (Cal.App. 6 Dist.,2004). Defendants' failure to comply with the statutory requirements did in fact prejudice Plaintiff's interest in her property. Plaintiff was only able to mitigate substantial damages due to receipt of the advertisement. But for this advertisement, Plaintiff would not have been able to mitigate the immense damages she would have suffered.

176.   "In one case, the Ninth Circuit rejected the borrower's claim that a foreclosure conducted under California law was *95 invalid because notice of sale was sent to the wrong address. (See *Lehner v. United States* (9th Cir.1982) 685 F.2d 1187 (*Lehner* ).) The court reasoned: "[T]he record reveals clearly that she [the borrower] knew the foreclosure sale was imminent. Her repeated efforts to delay the impending sale attest to her knowledge.... She makes no suggestion that the written notice would have supplied information not already known to her ... nor did she allege that she never received actual notice of the foreclosure sale. Her constitutional argument thus boils down to due process requiring the meaningless formality of written (rather than oral) notice. [¶] We refuse to elevate form over substance." (*Id.* at pp. 1190–1191; see also *Crummer v. Whitehead* (1964) 230 Cal.App.2d 264, 267–268, 40 Cal.Rptr. 826 [borrower's challenge to sale on basis that default notice not properly served on her attorney rejected, where attorney actually received the notice].). Knapp v. Doherty, 123

Cal.App.4th 76, 94-95, 20 Cal.Rptr.3d 1, 15 (Cal.App. 6 Dist.,2004)

177.    In the case at bar, unlike in *Lehner v. US*, Plaintiff did not receive oral or written notice of the sale dates from Defendant. Thus, Plaintiff lacked actual knowledge of the impending sale. Plaintiff was pursuing remedies to modify her loan and cure any purported arrears. Plaintiff has not been stalling foreclosure procedures and unlike in *Lehner* neither Plaintiff nor her attorneys received actual notice of the sale.

178.    Lastly, all of the cases here and previously presented are brought by Plaintiffs seeking to rescind a sale that has already taken place. Of course, a higher burden would be placed on a Plaintiff in that situation given the rights of third parties could be abridged if the sale is rescinded. However, those issues just are not the present in the instant case. There are no third parties to be concerned with. Defendants must be held liable for their actions. They have failed to comply with the law and must be held responsible for their actions. If Plaintiff had not received that advertisement and her home had been sold the prejudice she would have suffered would be immense, especially given she was under review for a loan modification.


WHEREFORE Plaintiff will as for the following for each Cause of Action sustained:

1.    For Compensatory Damages in an amount to be determined by proof at trial.

2.    For Special Damages in an amount to be determined by proof at trial.

3.    For General Damages in an amount to be determined by proof at trial.

4.    For Treble Damages in an amount to be determined by proof at trial.

5.    For Punitive Damages as against the individual Defendants.

6.    For Attorney's Fees and Costs of this action as provided in the controlling agreement between the parties which is the Deed of Trust.

7.    For Declaratory Relief, including a declaration that Plaintiff are the prevailing party.

8.    Injunction stating that Plaintiff are the rightful owner of the subject property.

**SECOND AMENDED COMPLAINT**

9.      For any prejudgment or other interest according to law.

10.     Any other and further relief that the Court considers just and proper.

Dated: August 25, 2014                  STEPHEN R. GOLDEN & ASSOCIATES

_____
                                        Te'Aira L. Law, Esq.
                                        Attorneys for the Plaintiff
                                        NOEMI PENALOZA

**JURY DEMAND**

Plaintiff demands a jury trial for all causes of action set forth herein.

Dated: August 25, 2014                  STEPHEN R. GOLDEN & ASSOCIATES

_____
                                        Te'Aira L. Law, Esq.
                                        Attorneys for the Plaintiff
                                        NOEMI PENALOZA

1

## <u>VERIFICATION</u>

2

3       I, NOEMI PENALOZA, am a party to this action.  I have read the

4 foregoing Complaint and know its contents.  The matters stated in it are true to the best of

5 my own knowledge, except as to those matters which are stated on information, and

6 belief, and as to those matters I believe them to be true.

7       I declare under penalty of perjury pursuant to the laws of the State of

8 California that the foregoing is true and correct.

9

10 Dated:  August 20, 2014

11                     NOEMI PENALOZA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PENALOZA/SAC                            Case No. : 2:14-cv-02571-PA-PJW

**SECOND AMENDED COMPLAINT**

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the City and County of Los Angeles, California. I am over the age of 18 and not a party to the within action.  My business address is 600 N. Rosemead Blvd, Suite 100, Pasadena, California 91107-2101.

On the date set forth below, I served the following document(s) described as:

## SECOND AMENDED COMPLAINT

On the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| Attorney | Telephone/ Facsimile/Email | Party |
|---|---|---|
| Joseph Duffy, Esq. Joseph Quattrocchi, Esq. Morgan, Lewis, & Bockius LLP 300 S. Grand Avenue Twenty-Second Floor Los Angeles, CA 90071-3132 | Tel: (213) 612-2500 Fax: (213) 612-2501  Email: jduffy@morganlewis.com jquattrocchi@morganlewis.com | Attorneys for Defendant JP Morgan Chase Bank, N.A. |
| Jonathan M. Zak, Esq. Gwen H. Ribar, Esq. James J. Ramos, Esq. Wright, Finlay, & Zak, LLP 4665 MacArthus Court, Suite 280 Newport Beach, CA 92660 | Tel: (949) 477-5050 Fax: (949) 477-9200  Email: jzak@wrightlegal.net gribar@wrightlegal.net jramos@wrightlegal.net | Attorneys for Defendant Select Portfolio Servicing, Inc. |

☒ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☒ (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addresses listed above by electronic mail at the email address(s) set forth above pursuant to Fed. R. Civ. P.5. (d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed. R. Civ.P.5.(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se.

Lara v. M&T Bank                                          Case # 2:14-cv-03485-MWF-MRW

FIRST AMENDED COMPLAINT

☒ (Federal)  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 25, 2014, at Pasadena, California.

Nohemi Gomez

**List of Exhibits**

*Exhibit 1*: Uniform Residential Loan Application

*Exhibit 2*: Deed of Trust

*Exhibit 3*: 12 U.S.C. §2605(e)-(f).

*Exhibit 4*: Qualified Written Request- Sent to Chase

*Exhibit 5*: Qualified Written Request- Sent to SPS

*Exhibit 6*: Letter to Chase about 2924f Violation.

*Exhibit 7*: Faxes Sent to Char Cave 3/3/2014 & 3/5/2014

*Exhibit 8*: Letter to Chase re: failure to communicate